No. 44,010

O. L. HOLLAND, *Appellee*, v. BUFORD J. LUTZ and NORMAN E. GAAR, *Appellants.*

(401 P. 2d 1015)

Opinion filed May 15, 1965.

*Kenith R. Howard, Jr.,* of Mission, was on the briefs for the appellants.

*W. C. Jones,* of Olathe, was on the briefs for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal from an order overruling the defendants' demurrer to the plaintiff's petition. The demurrer set forth two grounds: (1) That the petition fails to state facts sufficient to constitute a cause of action, and (2) misjoinder of causes of action. However, the defendants (appellants) now rely solely on the first ground of their demurrer and, in this opinion, we shall confine ourselves to that point.

In substance, the petition alleges that the defendants, Buford J. Lutz and Norman E. Gaar, were, respectively, the duly elected, qualified and acting mayor and police judge of the city of Westwood, Kansas; that about November 21, 1962, Mayor Lutz signed the following complaint against the plaintiff:

"STATE OF KANSAS, County of Johnson, City of Westwood. ss. In the Police Court of Westwood, Kansas.

"Buford J. Lutz, Mayor of the City of Westwood being duly sworn, on oath says, that on or about the 14th day of November, 1962, in the City of Westwood, County of Johnson, and State of Kansas, O. L. Holland d/b/a Johnson County Bonding Co. did then and there unlawfully, refuse to pay a debt of $198.00 owed to said City by virtue of the failure of Lawerence Cox to appear in the Police Court of said City on said date, said O. L. Holland having guaranteed said appearance by executing as surety the recognizance of said Lawerence Cox to appear in said court when summoned. Contrary to sections 15-507 and 15-508 G. S. 1949.

/s/ BUFORD J. LUTZ

"Subscribed and sworn to before me, this 21st day of November, 1962.

/s/ NORMAN E. GAAR"

and that thereafter Judge Gaar issued a warrant for plaintiff's arrest which, omitting formal parts, is as follows:

"THE STATE OF KANSAS TO THE MARSHALL OF THE CITY OF WESTWOOD IN SAID COUNTY:

"WHEREAS, Complaint in writing, under oath, has been made to me, and it appearing that there are reasonable grounds for believing that on the 14th day of November, A. D. 1962, in the city of Westwood in Johnson county and State of Kansas, one O. L. Holland d/b/a Johnson County Bonding Co. did then and there UNLAWFULLY refuse to pay $198.00 forfeited surety bond upon the failure of Lawerence Cox to appear in the Police Court of said City, contrary to sections 15-507 and 15-508, G. S. 1949.

"YOU ARE THEREFORE COMMANDED, Forthwith, to arrest said O. L. Holland d/b/a Johnson County Bonding Co. and bring him before me at my office, in said city, to answer said charge, and then and there return this writ.

"WITNESS my hand, at my office, in said City, this 21st day of November, A. D. 1962.

/s/ NORMAN E. GAAR

(Seal) Police Judge."

The petition further alleges that plaintiff was arrested and placed in custody pursuant to the warrant, and entered into a $250.00 cash recognizance bond, which the city still holds; that upon a hearing, Gaar, as police judge, entered judgment against plaintiff for $198.00 and $1.00 costs; that this judgment was appealed to the district court of Johnson county, Kansas, where the proceedings against plaintiff were quashed on the grounds that the police court of Westwood had no jurisdiction to render the judgment, and that the

purported cause of action was civil in nature and enforceable only in a court of competent jurisdiction; that thereafter the city of Westwood took an appeal to the Supreme Court of Kansas, which is pending; and that plaintiff was forced to employ counsel to represent him in all three courts.

It is alleged further that the acts of defendants were unlawful and unjustified in that (1) the police court had no jurisdiction of either the subject matter or the person; (2) that the allegations contained in the complaint and warrant did not violate any ordinance of Westwood; (3) that none of the proceedings in either complaint or warrant charged a public offense; and (4) that the judgment entered against the plaintiff was a departure from the criminal proceedings instituted against him.

The petition concludes with allegations that the arrest was circulated extensively in Johnson county and published in newspapers by reason of which the plaintiff's reputation was injured; that the defendants acted maliciously with a design to injure plaintiff, well knowing that the complaint failed to state a crime, and that the court was without jurisdiction; that plaintiff has been damaged in the sum of $10,000.00, and is entitled to exemplary damages of $25,000.00.

To complete the picture, we should point out that our opinion in the case of *City of Westwood v. Holland,* 193 Kan. 375, 394 P. 2d 56, heard by this court after the present case was filed, sustained the lower court's judgment quashing the proceedings.

The gist of plaintiff's alleged cause of action is that he was unlawfully restrained of his liberty by the actions of the two defendants. Whether this be denominated false imprisonment or false arrest is immaterial, for it is said that false arrest and false imprisonment as causes of action are indistinguishable. Both consist of the illegal restraint of one person's liberty by the act of another person. (22 Am. Jur., False Imprisonment, §§ 2, 3, pp. 353, 354.) Accordingly, the same legal principles are applicable to both torts regardless of how the cause of action may be termed.

In disposing of this case, we shall consider the liability of each defendant separately; first, that of Judge Gaar, and next, that of Mayor Lutz. At this point, however, we pause to note that malice is not a material element of false arrest or imprisonment. The motive with which a restraint of liberty is accomplished, be it evil or good, is irrelevant to the question of whether or not an unlawful arrest has been established. The existence of actual malice is

of consequence only as it may afford the basis for punitive damages. In *Garnier v. Squires*, 62 Kan. 321, 62 Pac. 1005, this court said:

"As will be seen, malice and wilfulness are not essential elements of false imprisonment, and the motives of the defendant, whatever they may have been, are not material to the case so far as making out a right of action is concerned, and can never be material except where something more than compensatory damages are sought. If exemplary damages are sought, proof of malice in making an arrest or imposing restraint is competent. . . ." (p. 324.)

See also *Comer v. Knowles*, 17 Kan. 436; 22 Am. Jur., False Imprisonment, §§ 22-27, pp. 368-370; 35 C. J. S., False Imprisonment, § 7, pp. 629-631.

Proceeding to the merits, we may state it is a general, if not, indeed, the universal, rule that where a person acts in a judicial capacity he has immunity from liability for false arrest or imprisonment, so long as he acts within the scope of his jurisdiction. (22 Am. Jur., False Imprisonment, § 52, p. 390.) This rule is expressed in 35 C. J. S., False Imprisonment, § 44a, p. 705, in this wise:

"Based on the principle that all judicial officers are protected by their official character from liability in tort, because of public conduct clearly within the pale of their authority, although involving demonstrable legal error, . . . it is the general rule that a judicial officer is not liable for a false arrest or detention arising out of acts done in his judicial capacity where there is not a clear absence of all jurisdiction over the subject matter and person, even though such acts constitute an excessive or erroneous exercise of jurisdiction or involve a decision that the officer had jurisdiction over the particular case where in fact he had none. The rule is sometimes stated in somewhat different terms to the effect that a judicial officer is not liable when the arrest or detention is in a case belonging to a class over which he has cognizance, and is by complaint or other proceedings put at least colorably under his jurisdiction."

This was early declared to be the law in Kansas. In *Clark v. Spicer*, 6 Kan. 440, it was held:

"It is a general principle of law that whenever a judicial officer acts within the scope of his jurisdiction he is not liable, however erroneous his acts may be." (Syl. ¶ 1.)

The rationale of this doctrine is not difficult to comprehend. It is to society's interest that judicial officers be free to exercise their best independent judgment, and to act in accordance with their own convictions without fear of personal consequences. In *Brown v. Larimer*, 132 Kan. 81, 294 Pac. 906, it was said:

". . . The second principle is that the judges of our courts must be free to exercise their best judgment on any matter pending before them with-

out the fear of being held liable in damages if their ruling should prove to be erroneous. . . ." (p. 84.)

The rules granting immunity to judicial officers for official acts performed within the scope of their jurisdictions generally apply, not only to judges of courts of general jurisdiction, but to those of limited jurisdiction as well, including city magistrates. (*Reilly v. United States Fidelity & Guaranty Co.*, 15 F. 2d 314; *Shampagne v. Keplinger*, 78 Mont. 114, 252 Pac. 803; *Broom v. Douglass, et al.*, 175 Ala. 268, 57 So. 860.) This subject was discussed in *Brown v. Larimer*, supra, where the court had this to say:

". . . Within the respective jurisdictions of such inferior courts [police courts, examining magistrates, justices of the peace, probate courts, and the like] their judges are immune from personal liability, just as judges of courts of general jurisdiction are, but it is possible for a question to arise before the judges of such courts which is not within their jurisdiction. This necessarily follows from the fact that they are courts of limited jurisdiction." (p. 85.)

An exception to the doctrine of judicial immunity exists where the officer acts in the clear absence of all jurisdiction. (*Brown v. Larimer*, supra; 35 C. J. S., False Imprisonment, § 44d, p. 707.) Although this exception is well established, its application to a given set of facts is often difficult to determine and the basic question we must decide in this case, so far as Judge Gaar is concerned, is whether or not, in issuing the warrant upon the mayor's complaint, the judge was acting within or wholly without his jurisdiction.

It is true that in *City of Westwood v. Holland*, supra, we held, in essence, that the complaint on which the warrant was issued did not allege a criminal offense cognizable by the police judge. But this does not dispose of the problem presented here. The complaint in the Westwood case purported to be drawn under the provisions of G. S. 1949, 15-507 and 15-508. Section 15-507 concerns the giving of bonds and recognizances in third-class cities. Section 15-508 reads as follows:

"In case of the breach of any recognizance entered into as aforesaid, the same shall be deemed forfeited, and the mayor shall cause the same to be prosecuted against the principal and surety, or the surety alone. Such action shall be in the name of the city as plaintiff, and may be prosecuted before the police judge; and all moneys recovered in any such action shall be paid over to the city treasurer to the credit of the general fund of the city. Judgments rendered under this section may be appealed from to the district court in like manner and within the same time as appeals from justices are allowed in civil actions."

The city contended in Westwood that the legislature's use of the word "prosecute" authorized the type action which was instituted by the mayor's complaint. This contention was rejected by this court, where we said:

"We construe the word 'prosecute' as used in the statute (15-508, *supra*) to mean prosecute by a civil action and not by arrest and imprisonment. Any other construction would place such statute in violation of section 16 of our Bill of Rights." (p. 378.)

But we did not in Westwood decide that the police judge lacked jurisdiction to entertain an action to collect on a forfeited recognizance given under 15-508. As to this, we said:

"In conclusion, we point out, it must be understood that we are not passing on the power of the legislature to extend the jurisdiction of inferior courts to entertain proceedings to collect from sureties on forfeited recognizance bonds. . . ." (p. 378.)

We are aware of no constitutional infirmity which might be said to inhere in G. S. 1949, 15-508. In *State v. Keener,* 78 Kan. 649, 97 Pac. 860, it was said that the legislative power to organize police courts and provide for police judges is derived from article 2, section 1, of the Constitution which grants to the house of representatives and senate all legislative power of the state, including the power to provide for the organization and government of cities, and that the manner in which that power should be exercised rests in the discretion of the legislature.

In *City of Marysville v. Cities Service Oil Co.,* 133 Kan. 692, 3 P. 2d 1060, this court said:

"There can be no question but what the legislature had the power to vest the police judge with such jurisdiction as it might deem expedient, so long as it acted within its constitutional authority. . . ." (p. 697.)

The legislature has provided for the election of a police judge by a third-class city such as Westwood (G. S. 1949, 15-201), and has granted him jurisdiction to hear and determine offenses against city ordinances. (G. S. 1949, 15-503.) No reason has been suggested why the legislature might not also clothe the police judge with authority to hear cases for the collection of recognizances which have been forfeited in police court.

In our view, Judge Gaar had jurisdiction over the subject matter set out in the complaint, although his attempt to exercise his jurisdiction by means of criminal process was an erroneous procedure. However, we do not consider his error of judgment in such regard as characterizing his action as one clearly beyond or without his

jurisdiction. As bearing on this point, the language of the United States Supreme Court in *Bradley v. Fisher*, 13 Wall. (U. S.) 335, 20 L. Ed. 646, is peculiarly appropriate:

". . . A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. . . ." (pp. 351, 352.)

In *Grove v. Van Duyn*, 44 N. J. Law 654, 43 Am. Rep. 412, the liability of a justice of the peace for false imprisonment was at issue, and on this subject, the court said:

". . . Where the judge is called upon by the facts before him to decide whether his authority extends over the matter, such an act is a judicial act, and such officer is not liable in a suit to the person affected by his decision, whether such decision is right or wrong. . . ." (p. 660.)

That Judge Gaar may have come to a wrong conclusion as to the manner in which and the extent to which his jurisdiction should be exercised under G. S. 1949, 15-508 does not make his determination any less a judicial act. Hindsight is usually much clearer than foresight and it is hardly to be expected that city magistrates, many of whom may be unfamiliar with, or unschooled in, the intricacies, technicalities and niceties of the criminal law and its procedures, will always come up with correct decisions.

It is our conclusion that under the doctrine of judicial immunity, the plaintiff's petition fails to state a cause of action against the defendant Gaar.

We turn now to the defendant Lutz, who signed the complaint on which the warrant was issued.

Although there is not complete unanimity among the authorities, the general rules appears to be that a person who merely signs a complaint on which an arrest is made is not liable for a false arrest. This rule is stated in 22 Am. Jur., False Imprisonment, § 33, p. 375, as follows:

". . . The great weight of authority sustains the view that where a magistrate has general jurisdiction over the subject matter of a criminal prosecution, a person making a complaint before him is not, because of that act, liable

for false imprisonment, although the complaint is insufficient to charge the commission of a crime. . . ."

The majority rule finds support in decisions from many jurisdictions, although we need cite but a few. In *Smith v. Clark et al,* 37 Utah 116, 106 Pac. 653, the Supreme Court of Utah, after citing cases from Minnesota, Michigan, Wisconsin, Massachusetts and New Jersey, said:

"From the cases, and upon principle, we think it is clear that a party who merely originates a suit by stating the case to, or signing a complaint before, a court of justice is not guilty of trespass, though the proceeding should be erroneous or without jurisdiction. Such an application is only a plea to the magistrate to exercise his jurisdiction, leaving him to the exercise of that jurisdiction upon his own discretion, and cannot be considered as constituting the magistrate the agent of the complainant or suitor, or as calling upon him to act ministerially upon the authority of such complainant or suitor. . . ." (p. 124.)

In a much later case, *Aiken v. Shell Oil Co. et al and Huey,* 219 Or. 523, 348 P. 2d 51, the court quotes approvingly from *Smith v. Clark et al,* supra, and in following the majority rule states:

"There is no judicial question and no duty placed upon the complaining witness, other than to place the facts before the magistrate as they are asked of him and to verify them under oath. The magistrate, with the advice of the district attorney, performs the judicial function. Likewise, the officer making the arrest must act in a quasi-judicial manner in determining whether the person arrested is the one named in the warrant. That is not the duty of the complaining witness." (p. 535.)

Kansas has long adhered to the majority rule. In *Gillett v. Thiebold,* 9 Kan. 427, the situation was this: Thiebold had been arrested and committed to jail pursuant to an order of arrest issued in a civil action on an insufficient affidavit signed by Gillett. After being released on a writ of habeas corpus, Thiebold promptly sued Gillett for false imprisonment. In its opinion, the court said that the action of the justice of the peace, in examining the facts set out in the affidavit and in issuing the warrant thereon, was a judicial act, and held:

"Where the facts set forth in such an affidavit, though they may be slight and inconclusive, yet tend to prove the fraud, and the justice after examination thereof, issues the order of arrest, no action for false imprisonment will lie for a detention under such order, the other proceedings being regular." (Syl. ¶ 4.)

A similar situation came before this court in *Wagstaff v. Schippel,* 27 Kan. 450, where a complaining witness was sued for false imprisonment. The complaint appeared to be defective, but the

court held that it was sufficient to invite the examination and consideration of the justice and that under such circumstances an action of false imprisonment would not lie.

In a later case, *Lemmon v. King*, 95 Kan. 524, 148 Pac. 750, under facts somewhat different from those presented here, the court used language indicating approval of the rule:

"It is said that 'The person making the complaint upon which the warrant issues is not liable if he states the facts to the magistrate, even though such facts do not authorize the issuance of a warrant.' (Note, 67 Am. St. Rep. 411.) . . ." (p. 529.)

Our decision in *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 241 P. 2d 1192, does not conflict with the general rule or with previous decisions of this court. In Hammargren, the defendants had called the police who took plaintiffs to the police station where they were questioned and released. No written complaint was signed and no warrant issued. The unlawful arrest was alleged to have been made at the direction of the defendants and the court held there was sufficient evidence of instigation on their part to sustain a verdict against them. The petition in the instant case alleges only that Lutz signed the complaint; there are no allegations that he either requested, instigated or directed the plaintiff's arrest.

The general rule followed by this and other courts appeals to us as a salutary one. The right of private citizens to resort freely to their courts for redress of wrongs is fundamental to our system of society, and its exercise is to be encouraged, not hampered. The New York court, speaking in *Marks v. Townsend et al.*, 97 N. Y. 590, put the matter plainly when it said:

". . . This rule of exemption is founded in public policy, and is applicable alike to civil and criminal remedies and proceedings, that parties may be induced freely to resort to the courts and judicial officers for the enforcement of their rights and the remedy of their grievances without the risk of undue punishment for their own ignorance of the law or for the errors of courts and judicial officers. . . ." (p. 597.)

We do not intend, by any means, to intimate that a complainant may with impunity knowingly prefer false charges or otherwise act with malice and without probable cause. In 22 Am. Jur., False Imprisonment, § 33, p. 376, it is said:

"Of course, if the complaint is malicious and without probable cause, the complainant may be liable in another form of action. . . ."

Our own court pointed this out in *Wagstaff v. Schippel*, supra, in these words:

". . . The action for malicious prosecution is ample protection to the defendant, against an unwarranted and improper prosecution, and the prosecuting witness ought not, any more than the magistrate, to be compelled to guarantee the absolute sufficiency of the complaint, as prepared by the prosecuting officer. . . ." (p. 455.)

And in *Marks v. Townsend et al.*, supra, it is said that:

". . . The remedy of the party unjustly arrested or imprisoned is by the recovery of costs which may be awarded to him, or the redress which some statute may give him, or by an action for malicious prosecution, in case the prosecution against him has been from unworthy motives and without probable cause." (p. 597.)

But the plaintiff in the present case does not allege a cause of action for malicious prosecution. He plainly predicates his right to recover on a false arrest. As we have heretofore said, malice is not involved in false arrest; its presence does not make a lawful arrest unlawful, nor does its absence make an unlawful arrest lawful.

It is our conclusion that the plaintiff's petition fails to state a cause of action against the defendant Lutz, as well as against the defendant Gaar, and that the demurrer should have been sustained as to both of them.

The judgment of the court below is reversed and the case is remanded with instructions to sustain the defendants' demurrer.